UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER THOMAS MANIN,<br><br>Defendant. | 1:23-CR-10024-CBK<br><br>MEMORANDUM OPINION AND ORDER |

Defendant was charged in a second superseding indictment in Count I with possession of a firearm by a prohibited person, a felon in violation of 18 U.S.C. §922(g)(1) and a person subject to a protection order in violation of 18 U.S.C. § 922(g)(8). Defendant was charged in Count II with possession of a firearm by a prohibited person, a felon in violation of 18 U.S.C. §922(g)(1) and an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). Defendant and the government entered into a plea agreement wherein the defendant agreed to plead guilty to Count I and he entered a guilty plea on October 30, 2023.

Defendant admitted in the factual basis statement that he was a prohibited person because he was subject to a protection order. When the Court recited Count I during the change of plea hearing, the parties raised an objection to the language concerning defendant being a felon. Counsel for the government orally moved to amend Count I of the second superseding indictment to redact the language "having been convicted of a crime punishable by imprisonment for a term exceeding one year, and then knowing he had been convicted of a crime punishable by imprisonment for a term exceeding one year, and" and the Court orally granted the motion.

A presentence investigation report was prepared wherein the United States Probation and Pretrial Services presentence writer calculated defendant's total offense level using a base offense level of 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(B)(i)(I).

Defendant objected, contending that the parties "stipulated" in the plea agreement to a base offense level of 14. In the plea agreement, the parties agreed, *inter alia*:

> [T]he United States and the Defendant **stipulate** that the Defendant's sentence is to be initially calculated, pursuant to U.S.S.G. § 2K2.1. Under U.S.S.G. § 2K2.1(a)(6), the base offense level is 14 in that the Defendant was a prohibited person at the time of the offense.

Plea Agreement, Doc. Doc. 45, ¶ 8, entitled "Stipulated Offense Level" (emphasis supplied).

Federal Rule of Criminal Procedure 11(c) <u>Plea Agreement Procedure</u> provides, in part:

> (1) In General. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, **the plea agreement may specify that an attorney for the government will**:
>
> (A) not bring, or will move to dismiss, other charges;
>
> (B) **recommend, or agree not to oppose the defendant's request**, that a particular sentence or sentencing range is appropriate or **that a particular provision of the Sentencing Guidelines**, or policy statement, or sentencing factor **does or does not apply** (such a recommendation or request **does not bind the court**); or
>
> (C) **agree** that a specific sentence or sentencing range is the appropriate disposition of the case, or **that a particular provision of the Sentencing Guidelines**, or policy statement, or sentencing factor **does or does not apply** (such a recommendation or request **binds the court** once the court accepts the plea agreement).

Fed. R. Crim. P. 11(c) (emphasis supplied). The terms "recommend" and "agree" are legal terms of art when used in conjunction with plea agreements and the district court judges' responsibilities under Fed. R. Crim. P. 11(c).

Notably, the agreement does not cite to the relevant Rule 11(c)(1) provision applicable to the agreement.

The Eighth Circuit has also acknowledged that, under Rule 11(c)**(1)(C)**, "a plea agreement may *stipulate* 'that a specific sentence or sentencing range is the appropriate disposition of the case' and 'such a recommendation or request binds the court once the court accepts the plea agreement.'" United States v. Worthington, 89 F.4th 1058, 1060 (8th Cir. 2024) (emphasis added). *See also*, United States v. Williams, 750 Fed. Appx. 510, 511 (8th Cir. 2019) (noting that Rule 11(c)**(1)(C)** allows the parties "to *stipulate* a sentence or sentencing range in a plea agreement.") and United States v. Hoskins, 489 Fed. Appx. 990, p. 2 (8th Cir. 2012) (noting that the parties had "stipulated" in a Rule 11(c)**(1)(C)** agreement to the sentence).

Stipulations in plea agreements are clearly "Type-C" agreements under Fed. R. Crim. P. 11(c)(1)(C).

Rule 11(c) sets forth specific obligations of the district court and protections for criminal defendants with regard to recommendations and stipulations in plea agreements.

    (3)    Judicial Consideration of a Plea Agreement.

        (A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.

        (B) To the extent the plea agreement is of the **type** specified in Rule 11(c)(1)**(B)**, the court **must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.**

    (4)    Accepting a Plea Agreement. If the court accepts the plea agreement, it **must inform the defendant** that to the extent the plea agreement is of the **type** specified in Rule 11(c)(1)**(A) or (C), the agreed disposition will be included in the judgment.**

    (5)    Rejecting a Plea Agreement. **If the court rejects** a plea agreement containing provisions of the **type** specified in Rule 11(c)(1)**(A) or (C), the court must do the following on the record and in open court** (or, for good cause, in camera):

        (A) **inform the parties** that the court rejects the plea agreement;

> (B) **advise the defendant** personally that the court is not required to follow the plea agreement **and give the defendant an opportunity to withdraw the plea**; and
>
> (C) **advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant** than the plea agreement contemplated.

Fed. R. Crim. P. 11(c) (emphasis supplied).

The government attempted to prevent the defendant's protections in Rule 11(c) by including a provision in Paragraph 8 of the plea agreement that:

> The Defendant further understands that should the Court not follow the terms of this stipulation and agreement, he will not be allowed to withdraw his plea.

Such a plea agreement provision in the same paragraph as language that would qualify as type 11(c)(1)**(C)** is contrary and offensive to the protections of Rule 11(c)(3), (4), and (5). Such a provision is not enforceable if the court rejects a Type-C plea agreement.

The United States Supreme Court has explained:

> A sentence imposed pursuant to a Type–C agreement is no exception to the general rule that a defendant's Guidelines range is both the starting point and a basis for his ultimate sentence. Although in a Type–C agreement the Government and the defendant may agree to a specific sentence, **that bargain is contingent on the district court accepting the agreement and its stipulated sentence.** The Sentencing Guidelines prohibit district courts from accepting Type–C agreements without first evaluating the recommended sentence in light of the defendant's Guidelines range. USSG § 6B1.2(c). So in the usual case the court's acceptance of a Type–C agreement and the sentence to be imposed pursuant to that agreement are "based on" the defendant's Guidelines range.

Hughes v. United States, 584 U.S. 675, 686–87, 138 S. Ct. 1765, 1776, 201 L. Ed. 2d 72 (2018) (internal citation omitted) (emphasis added).

Prior to the sentencing hearing, I advised the parties in writing that their stipulated base offense level of 14 was contrary to the Sentencing Guidelines and the facts of this case. Guidelines § 2K2.1(a)(4) directs that a base offense level of 20 be applied if (A) the defendant was a felon or (B) the offense involved a "semiautomatic firearm that

4

is capable of accepting a large capacity magazine." Counsel for the government responded by moving to supplement the record in writing that I had orally granted the government's motion to strike the language from Count I of the indictment charging that the defendant was a felon. Counsel for the government further filed a memorandum wherein the government first cited to Rule 11(c) and "doubled-down" on the position that the government merely "recommended" that a sentencing factor applied and thus the Paragraph 8 provision of the plea agreement was merely a Type-B provision under Fed. R. Crim. P. 11(c)(1)(B). The government continued to assert that, under the Sentencing Guidelines, the correct base offense level is 14.

This matter came on for a sentencing hearing. At that hearing, I ruled that the plea agreement was a Type C agreement as described by Fed. R. Crim. P. 11(c)(1)(C). Because the plea agreement's stipulated base offense level was contrary to the Federal Sentencing Guidelines, I rejected the plea agreement and offered to let the defendant withdraw his plea. The parties continued to assert that the base offense level was 14. The parties relied upon Application Note 2 to USSG 5K2.1 which defines, in a more limiting fashion than the guideline itself, the phrase "semiautomatic firearm that is capable of accepting a large capacity magazine" as:

> [A] semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm.

USSG § 2K2.1, comment. (n.2). The parties asserted that the discovery in this case did not include any information as to the presence of a high-capacity magazine. Counsel for the defendant admitted that one of the firearms that defendant possessed was capable of accepting a high-capacity magazine but that Application Note 2 prohibited the application of the higher base offense level because the Court would be required to find that a magazine was attached to or in close proximity to the firearm.

The plain language of USSG § 2K2.1(a)(4)(B) unambiguously assigns a base offense level of 20 when a firearm offense involves a "semiautomatic firearm that is

5

capable of accepting a large capacity magazine." The United States Supreme Court long ago held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it . . . is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38, 113 S. Ct. 1913, 1915, 123 L. Ed. 2d 598 (1993).

Putting aside for the moment the case law discussing the applicability of Application Note 2, I find that a base offense level of 20 would in any event be applicable in this case. Base offense levels are determined based upon, *inter alia*, relevant conduct. U.S.S.G. § 1B1.3. The presentence report in this case shows unambiguously that the defendant had previously been convicted of felony grand theft, felony theft of drugs, and felony possession of LSD in Ohio state court in 1986. Defendant did not object to the fact that he has previously been convicted of a felony. Therefore, pursuant to § 5K2.1(a)(4)(A), the base offense level is 20. The plea agreement is contrary to the Federal Sentencing Guidelines and I cannot and do not accept the plea agreement.

Defendant orally moved to withdraw his guilty plea and, consistent with Fed. R. Crim. P. 11(c)(5)(B), such motion should be granted and was orally granted. The government orally withdrew its written motion to amend Count I of the second superseding indictment to remove reference to defendant's status as a felon and moved to vacate my previous oral order redacting Count I of the second superseding indictment. I orally granted that motion.

Now, therefore,

IT IS ORDERED:

1. The defendant's motion to withdraw his guilty plea is granted.

2. The government's oral motion to withdraw its written motion, Doc. 72, to supplement the record is granted. Doc. 72 is withdrawn.

3. The government's oral motion to vacate my prior oral order amending Count I of the second superseding indictment is granted. The oral order striking certain language from Count I of the second superseding indictment, which was entered on the record on October 30, 2023, is vacated.

4. The defendant's motion, Doc. 62, for a downward departure or variance is denied as moot.

5. The jury trial herein shall commence on Tuesday, July 23, 2024, at 10:30 a.m. in the Federal Courtroom of the U.S. Courthouse, 102 Fourth Avenue SE, Aberdeen, South Dakota.

6. July 5, 2024, is hereby set as the deadline for submission to the Court and filing of any proposed plea agreements, factual basis statement and motions to enter oral pleas.

7. All proposed jury instructions shall be submitted to the Court not later than ten (10) working days before trial.

8. Requests for subpoenas shall be filed no later than fourteen (14) working days before trial.

9. A list of witnesses and proposed exhibits, along with a copy of proposed exhibits, shall be submitted directly to the Court, the Clerk of Courts and to opposing counsel by no later than 9:00 a.m. on the Friday before trial.

DATED this 27th day of June, 2024.

BY THE COURT:

*Charles B. Kornmann*
CHARLES B. KORNMANN
United States District Judge